NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

THE ROMAN CATHOLIC CHURCH OF THE
DIOCESE OF PHOENIX, an Arizona
corporation; IMMACULATE CONCEPTION
ROMAN CATHOLIC PARISH
COTTONWOOD, an Arizona
corporation, *Petitioners*,

v.

THE HONORABLE MICHAEL BLUFF,
Judge of the SUPERIOR COURT OF
THE STATE OF ARIZONA, in and for
the County of YAVAPAI, *Respondent Judge*,

THERESA LEE, individually and on
behalf of her minor son, J.C.D.L,
and J.C.D.L., an individual, *Real Parties in Interest*.

---

No. 1 CA-SA 16-0171
FILED 9-15-2016

---

Petition for Special Action from the Superior Court in Yavapai County
No.  V1300CV2010-80142
The Honorable Michael R. Bluff, Judge

**JURISDICTION ACCEPTED IN PART, RELIEF DENIED**

---

COUNSEL

Manning & Kass Ellrod Ramirex Trester LLP, Scottsdale
By Anthony S. Vitagliano, Keith R. Ricker
*Counsel for Petitioners*

Shaw Law Firm PLLC, Cottonwood
By Michael A. Shaw
*Co-Counsel for Real Parties in Interest*

Law Offices of Charles Anthony Shaw PLLC, Prescott
By Charles Anthony Shaw
*Co-Counsel for Real Parties in Interest*

---

## MEMORANDUM DECISION

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Jon W. Thompson joined.

---

**K E S S L E R**, Judge:

¶1     The Roman Catholic Church of the Diocese of Phoenix and the Immaculate Conception Roman Catholic Parish Cottonwood (the Church) seek relief from an order of the superior court denying their motion to disqualify Judge Jeffrey G. Paupore from this matter.  For the reasons that follow, we accept jurisdiction of the issues directly related to the request to disqualify Judge Paupore, but deny relief.  We decline jurisdiction to the extent the Church asks us to review and vacate or reverse any decision of Judge Paupore.

### FACTUAL AND PROCEDURAL HISTORY

¶2     In 2010, Theresa Lee, individually and on behalf of her son, J.C.D.L. and J.C.D.L. (Lee) brought this action against the Church based on a deacon allegedly sexually molesting J.C.D.L.  The action was assigned to several different judges, some of whom ruled on substantive motions.  In 2014, Judge Paupore was assigned to the case.  Since then, Judge Paupore ruled on several substantive matters.  Until 2016, none of the parties sought to change the judge either as a matter of right or for cause.

¶3            In 2016, Judge Paupore held a telephonic conference call with the attorneys for the parties.  He explained that he had recalled that approximately a quarter of a century earlier he had represented a plaintiff suing a Catholic diocese in Michigan based on alleged sexual molestation by a priest.  Judge Paupore explained that he had not recalled the case before and the matter had settled in part because the priest had been convicted.  Judge Paupore thought this did not disqualify him from presiding over this matter.

¶4            The Church then filed a motion for change of judge.[1] The Church argued that if it had known about this prior case, it would have noticed Judge Paupore as a matter of right pursuant to Ariz. R. Civ. P. 42(f)(1) (Rule 42) and A.R.S. § 12-409 (2016) when the case was first assigned to him. The Church contended that by not disclosing the prior case at that time, Judge Paupore had essentially deprived it of the right to notice him as a matter of right and it was now seeking to disqualify Judge Paupore for cause pursuant to Rule 42(f)(2) and section 12-409. However, the Church did not file a notice of change of judge and in the affidavit attached to the motion, the Church's attorney did not say that if he had known of the prior case, he would have noticed him as a matter of right.

¶5            The Church's motion was assigned to Judge Bluff, who held an evidentiary hearing on the motion.  At that hearing, the Church conceded that in 2014, it had concerns about Judge Paupore because he had worked at the Yavapai County Attorney's Office which office had prosecuted the deacon who was alleged to have molested J.C.D.L, but had not sought to notice Judge Paupore at that time as a matter of right or move to disqualify him.  At the hearing, the Church also argued that the delayed disclosure supported a question as to his impartiality and for the first time raised Judge Paupore's rulings on motions as a further basis to disqualify him for cause.

---

[1]      Lee also filed a motion to change judge based in part on a ruling Judge Paupore had recently issued which was adverse to them, contending that they thought that Judge Paupore had erred in the ruling and might be trying to issue rulings favoring the Church to show he could continue to sit on the case.  Another judge denied that motion and Judge Paupore then reversed himself on the order about which Lee complained.  Lee is not seeking relief from the denial of their motion to disqualify Judge Paupore from this matter and opposes the Church's motion as well as the Church's petition for special action relief.

¶6          Judge Bluff denied the motion.  He found that the affidavit of counsel presented a prima facie case supporting a change of judge for cause and so he had scheduled a hearing.  The court found that Judge Paupore had not intentionally failed to disclose his earlier involvement in the Michigan case and that the delay only showed that the earlier case was insignificant to Judge Paupore.  The court also noted that the Church had conceded it had initially thought of noticing Judge Paupore as a matter of right when he was first appointed because the county attorney where Paupore worked had prosecuted an alleged molester of this child.  As to the for cause challenge, the court confirmed that the standard was whether the Church could establish that the judge's "impartiality can reasonably be questioned."[2]  Referring to Judge Paupore reversing rulings of prior judges, the court held that this was all part of the judicial discretion in handling the case and cannot be used to show removal for cause.  Finally, the court concluded that based on an objective view of the record, the involvement in a 25-year-old case was insufficient grounds to call into question the trial court's rulings and that the disclosure does not support a finding of bias or prejudice or prove Judge Paupore cannot be impartial.

**DISCUSSION**

¶7          A decision not to grant a party's exercise of his right to notice a judge without cause can only be reviewed by special action.  *Taliaferro v. Taliaferro*, 186 Ariz. 221, 223-24 (1996).  However, denials of a motion to disqualify a judge for cause can be reviewed on appeal after the judgment because, in part, if there is bias which occurs in the trial, the record on appeal might show that bias and any prejudice so as to be reviewable on appeal.  *Id.  See also Baron v. Dillard*, 1 CA-CV 14-0171, 2016 WL 54832,  at * 4, ¶ 25 n. 6 (Ariz. App. Jan. 5, 2016) (mem. decision) (noting that special action review is limited to review of peremptory challenges to judges and that orders denying motions to disqualify based on cause are reviewable on appeal) (*citing to Stagecoach Trails MHC, LLC v. City of Benson*, 232 Ariz. 562,

---

[2]          While the superior court also referred to the standard under A.R.S. § 12-409(B)(5) as requiring bias, prejudice or interest so that a party cannot obtain a fair and impartial trial, the court originally referred to the correct standard of whether the judge's impartiality can reasonably be questioned.  Since we assume the superior court knows and correctly applies the law, *In re William L.*, 211 Ariz. 236, 238, ¶ 7 (App. 2005), we interpret the statement to bias, prejudice or interest as merely being shorthand for the correct standard for judicial disqualification.

568, ¶ 21 (App. 2013) (in which the court reviewed judicial bias ruling on direct appeal).

**¶8**        Here, the Church attempts to tie its motion to disqualify Judge Paupore for cause to its original right to peremptorily notice the judge. Given this argument, we think it better to address the issue of disqualification at this stage of the proceedings.  Accordingly, we accept jurisdiction of the denial of the motion to disqualify to the extent it is based on Judge Paupore's involvement in a molestation case 25 years ago and any rulings he issued in this case.

**¶9**        However, we decline jurisdiction to the extent the Church is asking us to reverse or vacate Judge Paupore's rulings as improper horizontal appeals or as improperly decided while a motion to disqualify was pending.  Absent extraordinary circumstances, those kinds of rulings are subject to review on direct appeal after final judgment if the decision denying the motion to disqualify is reversed.  *See In re Marriage of Kay S.*, 213 Ariz. 373, 380-82, ¶¶ 35-42 (App. 2006) (in reversing denial of motion to disqualify judge, court of appeals would also reverse rulings by judge subject to disqualification); *Donlann v. Macgurn*, 203 Ariz. 380, 385, ¶¶ 28-31 (App. 2002) (reviewing "horizontal appeals" on direct appeal from judgment).  The Church's reliance on *State ex rel Montgomery v. Kiley*, 1 CA-SA 15-0273, 2015 WL 7074788 at * 2, ¶ 8 (Ariz. App. Nov. 13, 2015) (mem. decision) is misplaced.  In *Montgomery*, we granted special action relief from a horizontal appeal decision in which the trial court reversed holdings and on the eve of trial precluded the State from using prior evidence from a witness/victim who could not be subpoenaed for trial.  In accepting jurisdiction, we noted that the State could not appeal the interlocutory order in any way so there was no plain, speedy and adequate remedy on appeal. That is not the case here.

**¶10**        The Church has a heavy burden to show cause to recuse the judge. As we explained in *Stagecoach, id.* at ¶ 21,

> A party challenging a trial judge's impartiality must overcome the presumption that trial judges are free of bias and prejudice. Judicial rulings alone do not support a finding of bias or partiality without a showing of an extrajudicial source of bias or a deep-seated favoritism. And [a] change of judge for cause is not warranted if based merely on speculation, suspicion, apprehension, or imagination. We review for an

> abuse of discretion the denial of a motion for
> change of judge based on a claim of judicial bias.

(Internal citations and quotations omitted). As we also explained in *Stagecoach, id.* at ¶ 22,

> The City asserts that its claim of bias is supported by both an extrajudicial source and the cumulative effect of the trial judge's rulings in this case. The City attempts to demonstrate an extrajudicial source of bias by referring to the trial judge's purported "judicial philosophy" that when a zoning ordinance restricts a property owner's use of property, it is a constitutional "taking." But, as the presiding judge found, a judge's legal conclusions, if erroneous, can be corrected in an appellate proceeding; they do not, standing alone, indicate bias.

¶11 The Church's first argument is that Judge Paupore's failure to disclose the prior case prevented the Church from noticing him as a matter of right when he first was assigned to this case and that if the Church had known of that involvement in a church molestation case it would have exercised its notice as a matter of right.

¶12 We deny relief on this argument for several reasons. First, the argument is not supported by the Church's counsel's affidavit. In the affidavit, the attorney says the judge's "failure to timely inform the parties of this prior case deprived my clients of the ability to file a notice of change of judge under Rule 42(f)(1) . . . and forced them to seek this disqualification under [A.R.S.] 12-409". Nowhere does he say that he **would** have noticed Judge Paupore if he had known about the prior representation. In addition, the fact that Judge Paupore had been at the county attorney's office when it was prosecuting the deacon would have been a stronger reason to notice the judge as a matter of right, but the Church did not do so and apparently only considered seeking to remove him for cause, an issue on which it did not think it could prevail. We find no abuse of discretion in denying the motion to recuse on this theory.

¶13 Second, we reject the Church's argument that because the judge did not disclose the prior case for 14 months, that deprived it of the right to notice him without cause and the Church could now file such a

notice. The Church never asked the trial court to treat its motion to disqualify as a notice under Rule 42(f)(1). The closest it got was to say that the failure to disclose prevented it from using the Rule 42(f)(1) rights.

**¶14** Third, the Church conceded it had reasons to suspect the judge when he was first appointed because he was at the County Attorney's Office when it was prosecuting the deacon, but did not think that was enough to move to disqualify him. But it never explained why, based on that fact, it could have, but failed to, notice him as a matter of right. See Rule 42(f)(1)(D) (a party waives the right to change a judge as a matter of right when after notice to the parties, the judge rules on any contested issue, grants or denies a motion to dispose of one or more claims or defenses, or holds a scheduled conference or contested hearing).

**¶15** While the Church cites several cases in which the courts have held that the right to notice a judge is not "waived" if the party did not have knowledge of an assertedly significant fact or who the judge was,[3] most of those cases also point out that the Rule 42(f)(1) and its predecessors' notice provisions have been repeatedly limited to prevent parties from testing the waters on rulings and then trying to notice the judge. If we were to hold that a party who knew of a possible problem with a judge and did not notice him but then waited after various rulings and discovered an insignificant fact that was not disclosed to restart the notice period, it would lead to great abuse of the notice provisions.

**¶16** In essence, the Church never asked the court to treat its motion as a notice and it waived any notice of right by not noticing the judge when it had facts which raised concern about the judge. Thus, by waiting and then trying to notice him on a factor not sufficient for disqualification would be an abuse of the statute and rule. *Compare Wages v. Smith Barney Harris Upham & Co.*, 188 Ariz. 525, 531-32 (App. 1997) (party could challenge arbitrator's bias after entry of award when prior to arbitration arbitrator did not disclose his litigation against party's predecessor in interest on a similar issue).

---

[3]     *Williams v. Superior Court*, 190 Ariz. 80, 82-83 (App. 1997) (waiver provisions of Rule 42 do not apply when the party seeking to notice the judge did not have knowledge the court was going to issue decision); *Medders v. Conlogue*, 208 Ariz. 75, 78, ¶ 10 (App. 2004) (waiver provisions could not apply when party had no notice of who judge was so as to be able to notice the judge on a timely basis).

¶17 The Church's second argument is that Judge Paupore's involvement in representing an alleged victim of sexual crimes in a different parish and in a different state approximately a quarter of a century earlier was sufficient to disqualify the judge and that Judge Bluff used the wrong standard in denying the Church's motion.

¶18 We disagree with the Church. As explained *supra,* ¶ 6 and n.2, Judge Bluff began his ruling citing to the correct standard for disqualification. We assume he knew the correct standard and any language hinting about a different standard we take as merely shorthand for the correct standard. Additionally, the Church does not cite to any case in which a court found that a judge's involvement in one similar case 25 years in the past against a different defendant in a different state would call for his disqualification because the judge's impartiality might reasonably be questioned. Under that standard, any judge with any experience in the area which is the subject of the current case could be disqualified simply based on that experience. Based on the facts of this case, we refuse to allow Arizona disqualification standards to be abused by de minimis experience.

¶19 Finally, the Church contends that given the prima facie evidence of a possible basis for recusal for cause (based on extrajudicial experience in another case), the superior court should have considered Judge Paupore's rulings in this matter which the Church contends violate the rule against horizontal appeals or that they were issued while the motion to disqualify was pending.

¶20 The superior court did not abuse its discretion in not considering those rulings in denying the motion to disqualify. As it noted, the fact a new judge disagrees with a prior judge's rulings does not prevent the trial judge from revisiting those rulings and reversing. The court explained that if Judge Paupore was wrong, that is different than saying he could not be fair to the parties. Indeed, we note that not all horizontal appeals are inappropriate. Not only may they be appropriate when supported by new evidence, but a new trial judge assigned to a case is authorized to reverse another judge's prior ruling in the case if the judge concludes the earlier ruling was erroneous. See *Kiley*, *supra*, ¶ 9 (noting that while we frown on horizontal appeals, a court can properly reverse another judge when the first decision renders it manifestly erroneous or unjust (citing *Powell-Cerkoney v. TCR-Mont. Ranch Jt. Venture, II*, 176 Ariz. 275, 279 (App. 1993)).

¶21 Evidence sufficient to meet the standard for recusal generally cannot be based on judicial rulings, but must be extra-judicial. *Stagecoach,*

*id.* at ¶¶ 21-22. As we noted in *Stagecoach, supra*, at ¶ 21, "[j]udicial rulings alone do not support a finding of bias or partiality without a showing of an extrajudicial source of bias or a deep-seated favoritism." Conversely, if we do not have an extrajudicial source of bias or a deep-seated favoritism, we cannot look to the pleadings alone to create one. While the Church argues that it is the cumulative effect of both the alleged appearance of partiality based on prior involvement in a case 25 years ago and the adverse rulings that warrants disqualification, we impliedly rejected that argument in *Stagecoach, id*. The Church cites to no cases that say if there is a prima facie case for possible recusal for cause simply because the basis comes from extrajudicial sources, no matter how insignificant, the court can look at rulings in the current case to find a basis to disqualify.

## CONCLUSION

¶22        For the reasons stated above, we accept jurisdiction on the disqualification issues, but deny relief and decline jurisdiction on the remaining issues.



AMY M. WOOD • Clerk of the Court
FILED:  AA

9